UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| NATHAN WEBSTER HECKFORD | * | CIVIL ACTION NO.  10-1451 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Nathan W. Heckford filed the instant application for Title XVI Supplemental Security Income payments on April 18, 2008.  (Tr. 123-125).[1]  He alleged disability as of August 1, 2003, because of obesity and mental issues.  (Tr. 132-133).  However, he subsequently amended his alleged disability onset date to April 18, 2008.  (Tr. 154).  The claim was denied at the initial stage of the administrative process.  (Tr. 63-68).  Thereafter, Heckford requested and received a May 13, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 50-62).  In an August 20, 2009, written decision, the ALJ determined that Heckford was not disabled under the Act,

---

[1]  A prior application for benefits was denied in October 2007.  (Tr. 139).

finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 10-25). Heckford appealed the adverse decision to the Appeals Council. On July 17, 2010, however, the Appeals Council denied Heckford's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On September 20, 2010, Heckford sought review before this court. He contends, *inter alia*, that the ALJ's Step Five determination is not supported by substantial evidence because he failed to employ a vocational expert to assess the effect of plaintiff's non-exertional mental impairment(s).

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can

>
> still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Heckford did not engage in substantial gainful activity during the relevant period. (Tr. 15). At Step Two, he found that Heckford suffers severe impairments of bipolar disorder, most recent episode depressed, severe, with psychotic features; attention deficit hyperactivity disorder, NOS (by history); cannabis dependence; alcohol dependence, early partial remission; personality disorder NOS, with antisocial personality features; and obesity. *Id*. The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 16-17).

In his brief to the court, plaintiff incorporates, by reference, his December 29, 2009, brief

to the Appeals Council wherein he argued that his bipolar disorder, with psychotic features, met Listing 12.04(3). To establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620.

The required level of severity for affective disorders under Listing 12.04 is met only when subsections A and B are satisfied or when the requirements in subsection C are satisfied. 20 C.F.R. Subpart P, App. 1, Section 12.04. The ALJ found that plaintiff's impairment(s) did not meet the criteria under paragraphs B or C. (Tr. 17). Plaintiff contends that his low Global Assessment of Functioning ("GAF") scores[2] translate into "marked" or "extreme" limitations that meet the subsection B criteria. *See* Tr. 156-158. However, plaintiff failed to cite any authority for this proposition. Moreover, the court is not persuaded that GAF scores translate so mechanically into functional limitations. On the other hand, the psychiatric review technique applied by the ALJ is not supported by any assessment by an agency psychologist.[3] Because this

---

[2] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

[3] To evaluate the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 416.920a(e). The psychiatric review technique rates the degree of functional limitation in four broad areas: activities of daily living; social

matter is to be remanded on other grounds, *see* discussion, *infra*, the ALJ will have the opportunity to consult a state agency physician regarding his Step Three determination. *See* 20 C.F.R. § 416.920(e)(5) (the ALJ may consult a medical expert to assist with completion of the psychiatric review technique).

## II.  Residual Functional Capacity

The ALJ next determined that Heckford retains the residual functional capacity to perform sedentary work, except that he is able to understand, remember, and carry out no more than simple job instructions consistent with unskilled work. (Tr. 17).[4]

Plaintiff does not challenge the ALJ's finding regarding his physical residual functional capacity. He does argue, however, that the ALJ's residual functional capacity assessment failed to account for plaintiff's "poor" judgment skills, as recognized by the consultative psychologist, David Williams, Ph.D.

Indeed, the record reveals that on July 13, 2009, Dr. Williams saw Heckford for a psychiatric diagnostic interview examination. (Tr. 205-211). Heckford reported that he was applying for disability because he could not stand up that long. *Id*. He reported three prior suicide attempts, and that his episodes of depression persist up to one year. *Id*. His most recent

---

functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*.

[4]  Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

episode lasted four to five months. *Id*. He stated that he could handle a job that did not require him to stand up a lot. *Id*. His impairments in functioning included arguments with family members, conflict with authority figures, diminished social interaction and activities, lack of close relationships and friendships, non-conforming behavior and involvement with the law, social withdrawal, verbal aggression, poor attention to psychiatric needs, poor personal hygiene and risk-taking behavior. *Id*. He reported that he was expelled from school for trying to stab the principal with a knife. *Id*. He stated that he was prescribed Prozac and Metformin, but could not afford it. *Id*. He last consumed alcohol and smoked marijuana two days earlier. *Id*.

Upon examination, Heckford appeared disheveled, his clothing was dirty and ill-fitting, and his hair was unkempt. *Id*. His speech was good, but he was fidgety. *Id*. His attitude was open and cooperative. *Id*. His judgment was poor; he was unable to provide solutions to basic problems. *Id*. His attention and concentration remained intact. *Id*. He was able to tolerate the stress of the interview without any problem. *Id*. He also demonstrated good persistence. *Id*.

Williams diagnosed Bipolar I Disorder, most recent episode depressed, severe, with psychotic features; attention-deficit/hyperactivity disorder, NOS (by history); cannabis dependence; alcohol dependence, early partial remission; personality disorder NOS; and antisocial personality features. *Id*. Williams also assigned a GAF of 40. *Id*.[5] Mental status examination revealed, *inter alia*, complaints of auditory hallucinations, marginal insight, and poor judgment. *Id*. His concentration, pace, and persistence were adequate. *Id*. He also was

---

[5] A GAF of 31-40 is defined as "**[s]ome impairment in reality testing or communication** (e.g. speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32 (emphasis in original).

able to manage his finances, when he was not sick. *Id*. He was credible. *Id*.

Furthermore, during the relevant period, Heckford was hospitalized at least twice because of his mental impairments. His first admission occurred from April 18, 2008, through April 24, 2008, because he was suicidal, with a depressed mood and auditory hallucinations. (Tr. 173-179). Upon admission, Heckford was hearing voices and was suicidal. *Id*. His condition could not be treated at a less restrictive level of care and inpatient treatment was deemed appropriate. *Id*. Heckford planned to cut his wrists with a knife. *Id*. He attempted suicide a year earlier after overdosing with Topamax and some other medications. *Id*. He said that Prozac, Seroquel and Risperdal helped him, but he could not afford the medications. *Id*. He saw shadows out of his peripheral vision and sometimes experienced tactile hallucinations. *Id*. He suffered from paranoia, with impaired insight and judgment. *Id*. Larrie Williamson, M.D. diagnosed him with Bipolar Disorder I, mixed, severe, with psychotic features, and assigned a GAF of 25. *Id*.[6]

Upon discharge Heckford had a GAF of 40. (Tr. 173-174). His prognosis was guarded with continued outpatient treatment, medication compliance and involvement with the recovering community. *Id*.

Heckford was again hospitalized from June 18, 2008, until June 21, 2008. (Tr. 198-199). Upon admission, he was diagnosed with Bi-polar Disorder, Type I, with borderline psychotic

---

[6] A GAF of 21-30 is defined as "**[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., largely incoherent or mute)." *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32 (emphasis in original).

features, and assigned a GAF of 55. (Tr. 196-197).[7]  Upon discharge, his hygiene was unclean with strong body odor. *Id*. Heckford left against medical advice. *Id*.

On April 21, 2009, Heckford went to the emergency room and was diagnosed with depression, suicidal thoughts, and diabetes. (Tr. 181). He stated that he had to sign himself into the hospital so he could get back on his medication. (Tr. 185). Upon examination in the emergency room, he was assigned a GAF of 45-50. (Tr. 187-188).[8] It was noted that he had psycho-social problems, prominent. *Id*.

On April 28, 2009, the Louisiana Office of Mental Health conducted a screening/intake assessment and psychiatric evaluation. (Tr. 191-193). At the time, Heckford resided at the Salvation Army. *Id*. He was unemployed, and not looking for work. *Id*. He stated that he was trying to get his SSI check "cut back on." *Id*. He denied current suicidal ideation. *Id*. He had not had a drink in seven months. *Id*. He was currently taking Prozac and Metformin. *Id*. He admitted to a suicide attempt at the age of 16 by cutting his wrist. *Id*. Heckford was casually dressed with poor hygiene. *Id*. He had a smell about him and a stained t-shirt. *Id*. He appeared somewhat depressed. *Id*.

On May 11, 2009, Heckford denied any suicidal/homicidal ideation, auditory or visual hallucinations. (Tr. 189-190). He admitted to crying spells once or twice a week. *Id*. He could not remember the last time he had a drink. *Id*. Alcohol helped him from feeling depressed. *Id*.

---

[7] A GAF of 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.

[8] A GAF of 41-50 denotes "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting ) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition DSM-IV, p. 32.

From these treatment records,[9] the ALJ was able to divine that Heckford's mental impairments resulted in limitations of functioning that did not preclude the demands of unskilled work. (Tr. 17). In this regard, the court observes that

> [t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A *substantial loss* of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15 (emphasis added).

Furthermore, according to the Commissioner's Program Operations Manual System ("POMS"),

> "[s]ubstantial loss" cannot be precisely defined. It does not necessarily relate to any particular adjective, number, or percentage. In practical terms, an individual has a substantial loss of ability to perform a basic mental activity when he/she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting where special considerations and attention are provided. **This requires professional judgment, on the basis of the evidence in file in each case**. The impairment in a claim of this type may meet or equal the listed medical criteria. **Therefore, before making a determination that includes vocational evaluation, the adjudicator should discuss the case with a psychiatrist or psychologist to learn whether a significant part of the evidence had been previously overlooked or underrated**.

POMS, DI 25020.010 *Mental Limitations* (emphasis added).

Conspicuously absent from the instant record, however, is a medical source statement by any examining psychologist or even a mental residual functional capacity assessment by a non-examining agency psychologist. *See* POMS DI 24510.090, *Mental RFC Assessment Form* SSA-4734-F4-SUP. Of course, the importance of such medical source statements or assessments

---

[9] The record contains other medical records that precede plaintiff's alleged disability onset date, as amended. For instance, pursuant to a June 4, 2007, mental status examination, Ischaji Robertson, Psy.D., noted that Heckford's impediments to successful employment included poor social skills, attention difficulties, and impulsivity. (Tr. 159-162). Robertson assigned a GAF of 58, which suggested moderate symptoms. *Id*.

is to provide the adjudicator with a professional opinion regarding the effects of the claimant's impairments on his functional capacity.

In this case, given the severity of plaintiff's mental impairments as indicated by his consistently low GAF scores, plus the fact that Dr. Williams indicated that Heckford's judgment was "poor,"[10] the court is not persuaded that the ALJ's unassisted mental residual functional capacity assessment is supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater*, 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[11]

---

[10] The ability to make simple work-related decisions requires the use of judgment. POMS, DI 25020.010 *Mental Limitations* (emphasis added). If Heckford's judgment is "poor," then his ability to make simple work-related decisions may be similarly impaired.

[11] In his decision, the ALJ faulted plaintiff for his failure to take his medication for his mental health complaints. The instant record, however, reveals two potential justifications for plaintiff's periods of apparent noncompliance. First, "federal courts have recognized that a mentally ill person's noncompliance with psychiatric medications could be the 'result of [the] mental impairment and, therefore, [the noncompliance is] neither willful nor without a justifiable excuse.' " *Grossweiler v. Barnhart*, No. SA-02-CA-903-RF, 2003 WL 22454928, at *2 (W.D.Tex. Sept. 30, 2003). Second, "[i]f . . . the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). With regard to the second justification, the ALJ took "judicial notice that indigent care is available for the asking . . ." (Tr. 22). While that may be so, the ALJ first should ascertain that the claimant was aware of these sources and, if so, why he did not take advantage of them. *See* Social Security Ruling 82-59 (the

### III. Step Five and Remand

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled also is not supported by substantial evidence.[12]

Plaintiff urges the court to enter a judgment awarding benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

---

claimant "will be *afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so*." *Id.* (emphasis added); *see also* 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled . . .") (emphasis added).

[12] Accordingly, the court need not reach plaintiff's primary argument that because he suffered from a non-exertional impairment, the ALJ was not at liberty to rely upon the medical-vocational guidelines at Step Five. Nevertheless, the court observes that, "[w]hen the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, . . . and the claimant either suffers only from exertional impairments or *his non-exertional impairments do not significantly affect his residual functional capacity*, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (emphasis added) (citations omitted); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). Further, when the claimant suffers solely from a non-exertional mental impairment that "prevents her from performing her past work *and the full range of other available work*, the [Commissioner] must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (citation and internal quotation marks omitted) (unskilled work).

The ALJ pointed out in his decision that the medical-vocational rules only contemplated unskilled work, and because the limitation of functioning from plaintiff's mental impairment was consistent with the demands of unskilled work, the ALJ was permitted to rely exclusively on the medical-vocational guidelines. (Tr. 24-25). While this rationale enjoys some support, it raises additional questions as to whether the ALJ imposed less-than-significant functional limitations as a result of plaintiff's mental impairment in order to avoid the obligation to consult a vocational expert along with the attendant delay and expense.

cause for a rehearing." 42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).  The instant record is not so disposed.  At a minimum, the severity and effects of plaintiff's mental impairment(s) remain indeterminate.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 16th day of December 2011.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE